LOMBARD, J.,
Dissents.
hFor the reasons that follow, I respectfully dissent.
A trial judge has a duty to give instructions which properly reflect the law appli *1036 cable in light of the facts of the particular ease. Guidry v. Bank of LaPlace, 94-1758 (La.App. 4 Cir. 9/15/95, 661 So.2d 1052). 661 So.2d 1052, 1055 (citing Barnett v. New Orleans Public Service, Inc. 489 So.2d 452, 454-55 (La.App. 4 Cir.1986)). In order to fulfill that duty, the trial judge must both require that the jury consider only the correct law and avoid confusing the jury. Guidry, supra (citing Kennedy v. St. Charles General Hosp. Auxiliary, 630 So.2d 888, 895 (La.App. 4 Cir.1993), writ denied, 634 So.2d 863 (La.1994)).
An insurance contract must be construed as a whole, and each provision in the policy must be interpreted in light of the other provisions so that each provision is given the meaning suggested by the whole; one portion of the policy should not |2be construed separately at the expense of disregarding other provisions. La. Civ. Code art. 2050; Peterson v. Schimek, 98-1712, p. 5 (La.3/22/99), 729 So.2d 1024. Absent a conflict with statutory provisions or public policy, insurers are entitled to limit their liability and to impose and enforce reasonable conditions upon the policy obligations they contractually assume.. Louisiana Ins. Guar. Ass’n v. Interstate Fire & Casualty, 93-0911, p. 5, (La.1/14/94), 630 So.2d 759, 763. Accordingly, interpretation of an insurance contract is a legal question usually resolved in the framework of a motion for summary judgment. Robinson v. Heard, 2001-1697, p. 4 (La.2/26/02) 809 So.2d 943, 945; see also La. Civ.Code art. 2045; Succession of Fannaly v. Lafayette Insurance Co., 01-1144, 01-1343, 01-1355, 01-1360, p. 3 (La.1/15/02), 805 So.2d 1134, 1137 (role of the judiciary in interpreting insurance contracts is to ascertain the common intent of the insured and insurer as reflected by the words in the policy).
Louisiana Code of Civil Procedure Article 1792 provides that “[ajfter the trial of the case and the presentation of all the evidence and arguments, the court shall instruct the jurors on the law applicable to the cause submitted to them.” La.Code Civ. Proc. art. 1792(B). Jury instructions serve to identify issues of material fact and to inform the jury of the appropriate standards of law by which to decide them. 89 C.J.S. Trial § 485. Thus, instructions should tell the jury what it must believe from the evidence in order to resolve each dispositive factual issue in favor of the party who has the burden of proof on the issue. 75A Am.Jur.2d Trial § 90; (citations omitted). In more general terms, the purpose of instructions is to furnish guidance to the jury in its deliberations and aid the jury in clearly comprehending the case in order to reach a correct, just, and fair verdict. 89 C.J.S. Trial § 485. Adequate jury instructions are those which fairly and reasonably point out the issues and which provide correct principles of law for the jury to apply to those ^issues. Adams v. Rhodia, Inc., 2007-2110, pp. 6-8 (La.5/21/08), 983 so.2d 798, 804-05. In addition, Louisiana Code of Civil Procedure Article 1812, pertaining to special jury verdicts provides, in pertinent part, that “[t]he court shall give to the jury such explanation and instruction concerning the matter submitted as may be necessary to enable the jury to make its findings upon each issue.” La.Code Civ. Proc. art. 1812(A) (emphasis added). The use of the word “shall” indicates that the trial court judge has a mandatory duty to accurately instruct the jury on all necessary factual issues that the jury is required to decide based upon the facts and evidence of the case. Berg v. Zummo, 2000-1699, p. 13 n. 5 (La.4/25/01), 786 So.2d 708, 716 n. 5 (implicit in this language is that “... the trial court give accurate and necessary instructions based upon the facts and evidence of the case.”); see also Maraist & Lemmon, 1 La. Civ. Law Treatise, Civil Procedure, § 11.10, p. 303: Wilson v. *1037 Transportation Consultants, Inc., 2004-0334, p. 9 (La.App. 4 Cir. 3/2/05), 899 So.2d 590, 599 (citing Berg v. Zummo, 2000-1699, p. 13 (La.4/25/01), 786 So.2d 708, 716 n. 5) (if the jury instructions or interrogatories contain a “plain and fundamental” error, the contemporaneous objections requirement is relaxed and appellate review is permitted). When a jury is erroneously instructed and the error probably contributed to the verdict, an appellate court must set aside the verdict. Nicholas v. Allstate Insurance Company, 99-2522, p. 8 (La.8/30/2000), 765 So.2d 1017, 1023 (citation omitted). In assessing an alleged erroneous jury instruction, the reviewing court must assess such impropriety in light of the entire jury charge to determine if they jury instructions adequately provide the correct principles of law as applied to the issues framed in the pleadings and evidence and whether the instructions adequately guided the jury in its deliberation. Id.
The jury instructions in this case were as follows. First, the trial court gave the generic instructions concerning the responsibility of the jurors, direct and 14circumstantial evidence, the burden of proof, credibility of the witnesses, and expert witnesses. He then told the jury:
You must determine whether plaintiff, Buffman, Inc. [St. Rita’s], has sustained a loss and whether that loss is covered by the policy of insurance issued to plaintiff by defendant, Lafayette Insurance Company/United Fire Group Insurance Company. An insurance policy is a contract between the two parties, Buffman, Inc [St. Rita’s], and Lafayette Insurance Company/United Fire Group Insurance Company, and has the effect of law between the parties. Like other contracts, a contract of insurance will generally be enforced according to its terms, and the respective rights and obligations of the parties, both of the insurance company and the policy holder, will be determined by the terms and provisions of the insurance contract. The words of the policy determine the extent of insurance coverage.
The policy at issue here provides coverage for damage or loss caused by wind and excludes damage or loss caused by flood. From the evidence presented, you must make a determination as to which of these, wind or flood, caused a loss. Wind damage is a covered loss in this policy as a “named peril.” Flood damage is not a covered loss in this policy. In that context, you should consider the temporal or timing of each event that causes damage or loss. The mere fact that damage or loss occurs by one of the causes, wind or flood, and is later exposed to the other cause is of consequence only to the extent that you decide the damage or loss was caused by one of those perils. Only if you decide that a loss has occurred for which there is coverage by a named peril must you calculate or compute that loss.
When the words of an insurance policy are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent and the agreement must be enforced as written. You should not interpret a provision of the insurance policy standing alone, but rather, you should interpret it in light of the other provisions in the policy so that each provision will be given the meaning that is suggested by the insurance policy as a whole. Words and phrases used in a policy are to be construed using their plain, ordinary and generally prevailing meaning, unless the words have acquired a technical meaning. Where a policy contains a definition of any word or phrase, its definition is controlling. Further, a broadly worded provision in an insurance policy susceptible of multiple interpretations is ambiguous as a *1038 matter of law and should be interpreted in a manner that supports rather than defeats coverage. Any doubt concerning the limitations on and exclusions from coverage under an insurance policy must be construed against the insurer and in favor of the insured.
In order for there to be a recovery on a policy, the cause designated in the policy must have been the proximate, and not a remote, cause of the loss. Wind must be an efficient cause of loss to recover on a windstorm policy. And where the term “direct” is used, referring to the cause of loss, it means proximate or immediate. Business income insurance compensates the insured for lost earnings that occurred as a result of the interruption of business. Business lüincome insurance protects against the loss of prospective earnings because of the interruption of the insured’s business caused by an insured peril to the insured’s property.
In the contract of insurance these clauses appear:
Business Income Coverage (and Extra Expense)
A. Coverage
Coverage is provided as described below for one or more of the following options for which a limit of insurance is shown in the Declarations:
(I) Business income including “rental value”
(II) Business income other than “rental value.”
(III) “Rental value.”
If Option (I) above is selected, the term business income will include “rental value.” If Option (III) above is selected, the term business income will mean “rental value” only.
If limits of insurance are shown under more than one of the above options, the provisions of this coverage part apply separately to each.
We will pay for the actual loss of business income you sustain due to the necessary suspension of your “operations” during the “period of restoration.”
The suspension must be caused by direct physical loss of or damage to property at the premises described in the declarations, including personal property in the open (or in a vehicle) within 100 feet caused by or resulting from any covered cause or loss.
The policy of insurance issued to Buffman, Inc., provides coverage for loss of business income for a maximum of 120 days or up to $600,000.00, whichever is less. The policy, in part, states:
F(2) Maximum Period of indemnity,
b. The most we win pay for loss of Business Income is the lesser of:
(1) The amount of loss sustained during the 120 days immediately following the damage, or
(2) The Limit of Insurance shown in the Declaration.
1. Business Income.
Business income means the:
a. Net income (net profit or loss before income taxes) that would have been earned or incurred; and
b. Continuing normal operating expenses incurred, including payroll.
2. Covered Causes of Loss.
|fiSee applicable causes of loss form as shown in the declarations.
3. Additional Coverages,
a. Extra Expense, in part.
Extra expense means necessary expenses you incur during the “period of restoration” that you would not have incurred if there had been no direct physical loss or damage to property caused by or resulting from a covered cause of loss.
*1039 (1) We will pay any Extra Expense to avoid or minimize the suspension of business and to continue “operations.”
(a) At the described premises; or
(b) At replacement premises or at temporary locations, including:
(I)Relocation Expenses; and
(ii) Costs to equip and operate the replacement or temporary locations.
(2) To minimize the suspension of business if you cannot continue “operations.”
4. Loss Determination.
a. The amount of business loss will be determined based on:
(1) The net income of the business before the direct physical loss or damage occurred;
(2) The likely net income of the business if no loss or damage occurred;
(3) The operating expenses. Including payroll expenses, necessary to resume “operations” with the same quality of service that existed just before the direct physical los r 0 damage; and
(4) Other relevant sources of information, including:
(a) Your financial records and accounting procedures;
(b) Bills, invoices and other vouchers; and
(c) Deeds, liens or contracts.
b. The amount of extra expense will be determined based on:
(1) All expenses that exceed the normal operating expenses that would have been incurred by “operations” during the “period of restoration” if no direct physical loss or damage had occurred. We will deduct from the total of such expenses:
(a) The salvage value that remains of any property bought for temporary use during the “period of restoration,” once “operations” are resumed; and
(b) Any extra expense that is paid for by other insurance, except for insurance that is written |7subject to the same plan, terms, conditions and provisions as this insurance; and
(2) All necessary expenses that reduce the business income loss that otherwise would have been incurred.
“Period of Restoration” means that period of time that:
a. Begins with the date of direct physical loss or damage caused by or resulting from any covered cause of loss at the described premises; and
b. Ends on the date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality.
B. Exclusions (in part).
1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss,
g. Water.
(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;
(2) Mudslide or mud flow;
(3) Water that backs up from a sewer or drain; or
(4) Water under the ground surface pressing on, or flowing or seeping through:
(a) Foundations, walls, floors or paved surfaces;
*1040 (b) Basements, whether paved or not; or (c) Doors, windows or other openings.
But if Water, as described in g.(l) through g.(4) above, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.
B. Exclusions (additional, in part).
2. We will not pay for loss or damage caused by or resulting from any of the following:
d(2) Rust, corrosion, fungus, decay, deterioration, hidden or latent defects, or any quality in property that causes it to destroy itself;
d(7) The following causes of loss to personal property.
(a) Dampness or dryness of atmosphere;
(b) Changes in or extremes of temperature; or
(c) Marring or scratching. But if loss or damage by the “specified causes of loss” or building glass breakage | ¡¡results, we will pay for that resulting loss or damage.
After reciting these policy provisions as part of the jury instructions, the trial court concluded that “Business loss insurance is intended to return to the insured’s business the amount of profit it would have earned had there been no interruption of business and allows the business to remain in the same financial condition as before a direct physical loss by an insured of a covered loss or peril” and that “Business income should be determined by adding the amount of net income to the amount of continuing normal operating expenses including payroll, less saved expense.” Finally, the trial court recited portions of La. Rev. Stat 22:658 and La. Rev. Stat. 22:1220 to the jury, as well as the portion of the insurance policy pertaining to duties of the policy holder in event of loss or damage.
As noted, the purpose of jury instructions is to present issues and law of the case in the most intelligible form to assure a verdict consistent with the evidence and the law. Accordingly, because interpretation of an insurance contract is a legal question to be determined by the court, it was clearly a plain and fundamental error for the trial court to circumvent its duty by submitting the matter to the jury and thereby allow the jury to resolve legal questions of policy interpretation. While evidence in the case, recitation of large portions of the insurance policy within the body of the jury instructions could only serve to confuse rather than refine the issues or law of the case for the jury. Moreover, the inclusion into the jury instructions of some, but not all, of the policy provisions served to highlight certain provisions and prevent their meaning from being construed in light of the policy as a whole. See La. Civ.Code art. 2050; Peterson, 98-1712 at p. 5, 729 So.2d at 1029; see also Brown v. White, 405 So.2d 555, 558 (La.App. 4 Cir.1981), jdgmt aff'd, 430 So.2d 16 (La.1982) (the adequacy of jury instructions must be determined in the light of jury instructions as a whole).
Thus, while the trial judge is under no obligation to give any specific jury instructions, he or she is obligated to correctly charge the jury. When a jury is erroneously instructed and it is probable that the error contributed to the verdict, the reviewing court must set aside the verdict. See Nicholas v. Allstate Insurance Company, 99-2522, p. 8 (La.8/31/2000), 765 So.2d 1017, 1023 (the determinative question is whether the jury instructions misled the jury to the extent that it was prevented from dispensing justice). It is with great reluctance that this court ever sets aside a jury verdict, but in this case the trial judge first circumvented his duty to make the appropriate legal determination and then gave the jury instructions *1041 that were, as a whole, confusing and misleading. Accordingly, after considering the instructions as a whole, as well as the circumstances of this case, I can only conclude that jury instructions in this ease were so incorrect and misleading as to preclude the jury from reaching a verdict based on the law and facts. Therefore, I would vacate the judgment of the trial court and remand the matter for further proceedings.