798 So.2d 1012 (2001)
Gregory FRYSON
v.
DUPRÉ TRANSPORT, INC., Reliance National Indemnity Company and Gregory Moore.
National Automotive Insurance Company
v.
Dupré Transport, Inc. and Reliance National Insurance.
Nos. 2000-CA-0858, 2000-CA-0859.
Court of Appeal of Louisiana, Fourth Circuit.
August 29, 2001.
*1014 Sidney D. Torres, III, Law Offices of Sidney D. Torres, III, Chalmette, LA, Counsel for Plaintiff/Appellee.
*1015 Charles M. Ponder, III, Lozes, Cambre & Ponder, New Orleans, LA, Counsel for Defendant/Appellant.
Court composed of Judge STEVEN R. PLOTKIN, Judge MICHAEL E. KIRBY, Judge MAX N. TOBIAS, Jr.
PLOTKIN, Judge.
Defendants, Gregory Moore, Dupré Transport, Inc., and Reliance National Indemnity Co. (hereinafter referred to collectively as "Dupré"), appeal a trial court judgment on a jury verdict awarding plaintiff, Gregory Fryson, $313,700 to compensate him for damages sustained as a result of an automobile accident. For the reasons discussed below, we amend the trial court judgment to delete the $25,000 award for loss of future earning capacity. As amended, we affirm.

Facts
The accident that forms the basis of this appeal occurred on Louisiana Highway 46, commonly known as the "St. Bernard Highway," at approximately 10:30 p.m. on April 25, 1997. Although the versions of the events leading up to the accident presented by the parties to this case differ in some details, everyone agrees that the accident occurred when Mr. Fryson's vehicle, which was traveling in the eastbound lane, struck the 18 wheeler semi-tractor/trailer driven by Mr. Moore as Mr. Moore was attempting to make a left turn into the westbound lane of St. Bernard Highway from the driveway of the Murphy Oil Refinery. It was either raining or had just stopped raining when the accident occurred. Mr. Moore was working for Dupré at the time of the accident; Reliance provided liability insurance to Dupré.
As a result of the accident, Mr. Fryson sustained a minor head injury and multiple fractures to his left arm, which required three surgeries prior to trial. Following a three-day trial, a 12-person jury returned a verdict against Dupré, awarding Mr. Fryson $313,700 in damages. Dupré appeals,[1] assigning both legal and factual errors. First, Dupré claims that the trial judge committed two reversible errors of law: (1) improperly excluding the defendants' visibility videotape, and (2) improperly failing to provide significant and substantial jury charges relative to the duties imposed on the drivers involved in the accident. Dupré also challenges the jury's factual finding that Mr. Moore was solely at fault in causing the accident, as well as the damage awards entered by the jury.

Alleged Legal Errors
Dupré claims that the trial judge committed two legal errors that require this court to reverse the jury verdict. Dupré requests that this court either order a new trial or conduct a de novo review of the evidence.

Exclusion of videotape
First, Dupré claims that the trial judge committed reversible error when he excluded a visibility videotape prepared by his expert witness, Douglas B. Robert, a civil engineer. According to the information presented at trial, the videotape was made with a substantially identical semitractor, the exact same tanker, and a Ford Taurus of the same make and model driven by Mr. Fryson in making the videotape, though it was a different model year. Dupré also claims that the operation of the semi-tractor/tanker in the videotape simulated Mr. Moore's actions on the night in *1016 question. However, Dupré admits that the videotape was filmed on a dry, clear night, despite the fact that it had been raining the night of the accident. Dupré claims that the videotape was designed solely to show the visibility of the semitractor/tanker on the night of the accident. The trial judge allowed Dupré to show freeze-frames of the videotape, but excluded the videotape itself, expressing his concern that playing the actual videotape might mislead or confuse the jury because the conditions were not the same as those existing the night of the accident. The trial judge listed a number of variables between the actual accident and the simulation recorded on the videotape. The trial judge also excluded depositions taken to support the videotape. Dupré claims that all of the trial judge's concerns involve the weight to be given the videotape by the jury, not the admissibility of the videotape. Dupré argues that the trial judge usurped the jury's position when it excluded the videotape.
Pointing out the great discretion afforded the trial judge in determining the admissibility of videotapes, Mr. Fryson claims that the fact that it was raining the night of the accident had a dramatic effect on his ability to see the semi-tractor/tanker because the roadway was glistening with reflected light, making it very difficult to see the semi-tractor/tanker, which was in the turning position and not directly facing Mr. Fryson at the time of the accident. Mr. Fryson also cites Pino v. Gauthier, 633 So.2d 638, 652 (La.App. 1 Cir. 1993) and Avery v. Scott, 216 So.2d 111 (La.App. 2 Cir.1968), in which the appellate court upheld a trial court's decision to exclude videotaped accident simulations.
Generally, the admissibility of a videotape is within the discretion of the trial judge. Olivier v. LeJeune, 95-0053, p. 10 (La.2/28/96), 668 So.2d 347, 351; Constans v. Choctaw Transport, Inc., 97-0863, p. 33 (La.App. 4 Cir. 12/23/97), 712 So.2d 885, 901. The admissibility of a videotape is determined on a case-by-case basis depending on the individual facts and circumstances of each case. Constans, 97-0863 at 33, 712 So.2d at 901. The factors to be considered in order to determine admissibility of a videotape are as follows: (1) whether the videotape accurately depicts what it purports to represent, (2) whether it tends to establish a fact of the proponent's case, and (3) whether it will aid the jury's understanding. Ibieta v. Star Casino, Inc., 98-0314 (La.App. 4 Cir. 10/7/98), 720 So.2d 143, 147. Against those factors, the trial judge must consider whether the videotape will unfairly prejudice or mislead the jury, confuse the issues, or cause undue delay. Id. The trial judge may exclude the evidence if the factors favoring admission are substantially outweighed by the factors against admission. Id.; La. C.E. arts. 401-403. Thus, the trial judge must conduct a three-part inquiry when determining whether a particular videotape is admissible in a particular trial.
First, the trial judge is to consider the three factors listed above: (1) whether the videotape accurately depicts what it purports to represent, (2) whether it tends to establish a fact of the proponent's case, and (3) whether it will aid the jury's understanding. The transcript in this case reveals that the trial judge failed to complete this first part of the three-part inquiry. However, after reviewing the videotape, we have no trouble finding that all the factors are met in this casethe videotape accurately depicted what it purports to represent (i.e., the visibility of the semitractor/tanker), the videotape tends to establish a fact of Duprés case, and the videotape would have aided the jury's understanding.
*1017 Second, the trial judge is to "weigh against" the above factors the questions of whether the videotape will unfairly prejudice or mislead the jury, confuse the issues, or cause undue delay. In his comments on the record of this case, the trial judge jumped straight to these considerations, without performing the first part of the three-part inquiry. The trial judge expressed his concern that viewing the videotape would confuse the jury because of the variables between the videotape and the accident. For example, the trial judge cited the fact that the tanker was empty when the videotape was made, while the tanker held 7,500 gallons of diesel fuel at the time of the accident. However, the trial judge failed to explain how any of those factors might have confused the jury concerning the only issue for which the videotape was offeredi.e., the visibility of the tanker. Moreover, the trial judge does not address whether the videotape might confuse the issues or cause undue delay.
Third, the trial judge is to determine whether the factors favoring admission are substantially outweighed by the factors against admission. The trial judge does not address this issue. However, we find that the factors against admission do not substantially outweigh the factors favoring admission. This case is distinguishable from Pino, in which the trial court essentially found that the videotape offered, which contained a computer simulation, was unnecessary because the testimony of the expert witness was clear and understandable. After applying the three-part inquiry for determining admissibility of a videotape, we find that the trial judge improperly excluded the videotape evidence.
Nevertheless, we do not believe that the trial judge's decision to exclude the videotape was so prejudicial as to require this court to reverse the trial judge judgment and perform a de novo review of the evidence. This court has described the circumstances in which an appellate court may conduct a de novo review because of a prejudicial error of law as follows:
A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. Lasha v. Olin Corp., 625 So.2d 1002, 1006 (La. 1993). When such a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining essential material facts de novo. Id. When one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and if the record is otherwise complete, the appellate court should make its own independent de novo review of the record and determine a preponderance of the evidence. Becnel v. Becnel, 98-593 (La. App. 5 Cir. 3/25/99), 732 So.2d 589, writ denied, 99-1165 (La.6/4/99), 744 So.2d 630.
Barriere Construction Co. v. Systems Contractors Corp., 99-2869, pp. 4-5 (La.App. 4 Cir. 5/17/00) 764 So.2d 127, 130.
Although the videotape offered by Dupré to show visibility was unique, we believe that other evidence presented at trial, including the freeze frames from the videotape, accomplished the same purpose that showing the videotape would have accomplished-i.e., show the visibility of the Dupré semi-tractor/tanker. For example, the jury saw the pictures taken by Mr. Moore immediately after the accident, which show the reflective nature of the silver paint used on the tanker, as well as the running lights and the red-and-white reflective tape attached to the tanker. Furthermore, Deputy John Huff, who investigated the accident, stated that he *1018 could see the running lights of the semitractor/tanker from seven-tenths of a mile away. Finally, Duprés accident reconstruction expert Douglas Brian Robert testified concerning the visibility of the Dupré semi-tractor/tanker. Accordingly, we find that the trial judge's improper exclusion of the videotape in this case did not so interdict the fact-finding process as to make it necessary for this court to undertake a de novo review of the evidence.

Jury instructions
Second, Dupré claims that the trial judge committed reversible error by failing to include its proposed jury instructions numbered 4, 5, and 7, which stated as follows:
4. The primary duty to avoid a collision rests on a driver entering a highway from a private driveway, but he is not required to desist from entry so long as any traffic is in sight and may proceed on to the principal thoroughfare under circumstances when it would appear to a reasonably prudent person that his entry can be made in safety and without obstructing passage of approaching traffic. Nevils v. Travelers Insurance Co., 255 So.2d 184 (La.App. 3 Cir.1971).
5. A motorist's duty of reasonable care includes a duty to keep his vehicle under control; further, a motorist has a duty to maintain a proper lookout for a hazard which, by use of ordinary care and observations, the motorist should be able to see in time to avoid running in to them. Thornhill v. State Department of Transportation, 676 So.2d 799 (La.App. 1 Cir.1996); Sinitiere v. Lavergne, 391 So.2d 821 (La.1980); Orillion v. Carter, 639 So.2d 461 (La.App. 1 Cir.1994).
7. A driver has a duty to drive defensively from the time the driver witnesses negligent operation of another vehicle or notices other hazards posing potential for resulting damage; that duty may include the duty to slow down or otherwise avoid risks posed by a vehicle ahead. Edwards v. Horstman, 687 So.2d 1007 (La.1997); Miller v. Coastal Corp., 635 So.2d 607 (La.App. 3d Cir. 1994); Hebert v. Lefty's Moving Service, 389 So.2d 855 (La.App. 4 Cir.1980).
Dupré claims that the only explanation for rejecting the above jury charges given by the trial judge was that the wording of LSA R.S. 32:124 covered the duties involved in this case. LSA R.S. 32:124 provides as follows:
The driver of a vehicle about to enter or cross a highway from a private road, driveway, alley or building, shall stop such vehicle immediately prior to driving onto a sidewalk or onto the sidewalk area extending across any alleyway or driveway, and shall yield the right of way to any pedestrian as may be necessary to avoid collision, and shall yield the right of way to all approaching vehicles so close as to constitute an immediate hazard.
In addition to the wording of the statute quoted above, the trial judge instructed the jury, in pertinent part, as follows:
Louisiana law also considers the negligence of any of the parties claiming damages, and you must determine if the defendant has proved that the plaintiff's conduct was substandard, that is, whether he or she failed to act as a reasonably prudent person. If defendants alleged plaintiff was negligent, then the defendants bear the burden of proving negligence and causation by a preponderance of the evidence. If you find there is negligence of both plaintiffs and defendants, you will be asked to compare their negligence....
If a motorist fails to see what he should have seen, then the law charges him with having seen what he should have seen....

*1019 A driver has a duty to keep a proper lookout, to maintain reasonable vigilance, to see what he should see and to drive prudently and exercise reasonable care under the circumstances....
A motorist on a favored street has a right to assume that any driver approaching the intersection on a less favored street will yield the right-of-way. And the driver on the favored street can indulge in such assumption until he sees or should see that the other car has not observed the law.
This court has described the trial judge's duty to instruct the jury as follows:
A trial judge has a duty to give instructions which properly reflect the law applicable in light of the facts of the particular case. In order to fulfill that duty, he must both require that the jury consider only the correct law and avoid confusing the jury. Likewise, jury interrogatories must fairly and reasonably point out the issues to guide the jury in reaching an appropriate verdict. If the verdict form does not adequately set forth the issues to be decided by the jury (i.e. omits an applicable essential legal principal [sic] or is misleading and confusing), such interrogatories may constitute reversible error.
Guidry v. Bank of LaPlace, 94-1758, p. 3-4, (La.App. 4 Cir. 9/15/95), 661 So.2d 1052, 1055 (citations omitted). When it finds that legal error in the trial judge's jury instructions and/or interrogatories prejudiced one of the parties, an appellate court should set aside the jury findings and perform a de novo review of the record. Marchetta ex rel. Marchetta v. CPC of Louisiana, Inc., 99-0485, p. 5 (La.App. 4 Cir. 3/22/00), 759 So.2d 151, 154.
Our review of the jury instructions in this case reveals that the trial judge fulfilled his duty to "give instructions which properly reflect the law applicable in light of the facts of the particular case" and to "fairly and reasonably point out the issues to guide the jury in reaching an appropriate verdict." Guidry, 94-1758 at 3-4, 661 So.2d at 1055. The substance of the instructions offered by Dupré and rejected by the trial judge is adequately communicated in the wording of LSA-R.S. 32:124, coupled with the instructions quoted above that were actually given by the trial judge. Accordingly, we find no merit in Dupré's arguments on this issue and again decline to perform a de novo review.

Alleged Factual Errors
Dupré claims that the jury committed three factual errors that should be corrected by this court.

Allocation of fault
Dupré primary argument in this case is that that the jury improperly assigned 100 percent of the fault to Mr. Moore and Dupré, when some of the fault should have been assigned to Mr. Fryson. In fact, the legal claims concerning the videotape and the jury instructions discussed above are intertwined with this claim. Dupré claims that the preponderance of the evidence presented at trial indicates that Mr. Fryson should have seen the Dupré semitractor/tanker and should have taken evasive action to prevent the accident by either stopping or slowing down to allow Mr. Moore to make the left-hand turn, or, at the least, should have swerved to the right to avoid Dupré's tanker in his lane. Dupré claims that Mr. Fryson was familiar with the area and knew that semi-tractor/tankers made left-hand turns onto St. Bernard Highway at that location, and that he should therefore have expected Dupré's actions and taken steps to avoid the accident. Dupré asserts that Mr. Fryson "had absolutely no explanation for failing to see and react to an obvious condition."
*1020 On the other hand, Mr. Fryson claims that Mr. Moore was trying to "shoot the gap" between the vehicles on the favored highway that were approaching the driveway of Murphy Oil and that he simply misjudged the time he had to make his turn before Mr. Fryson's vehicle would reach the location. Mr. Fryson claims that the prevailing conditions at the time of the accident prevented him from taking the proper evasive action to avoid the accident once Mr. Moore created the situation by his negligent act of attempting the make the left-turn before Mr. Fryson's vehicle arrived.
This court's review of the jury's factual findings concerning comparative fault are subject to the manifest error standard of review. Swan v. New Orleans Terminal Co., 98-2694, p. 5 (La.App. 4 Cir. 5/21/99), 745 So.2d 52, 56. That standard has recently been explained by this court as follows:
A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840 (La.1989). In Mart v. Hill, 505 So.2d 1120 (La.1987), the Louisiana Supreme Court posited a two-part test for the reversal of a fact-finder's determinations:
The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
The appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). Id. at 1127 (quoting Arceneaux v. Domingue, 365 So.2d at 1333 (La.1978)).
This test dictates that the appellate court must do more than simply review the record for some evidence that supports or controverts the trial court's finding. Id. The appellate court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous.
Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. See generally, Cosse v. Allen-Bradley Co., 601 So.2d 1349, 1351 (La.1992); Housley v. Cerise, 579 So.2d 973, 976 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). Even though an appellate court may feel its own evaluations and inferences are more reasonable than those of the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Rosell, 549 So.2d at 844-45. Nonetheless, this court has emphasized that "the reviewing court must always keep in mind that `if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" Housley v. Cerise, 579 So.2d 973, 976 (La.1991), (quoting Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990)).
*1021 Maney v. Evans, XXXX-XXXX, p. 3-4 (La.App. 4 Cir. 2/14/01), 780 So.2d 1136, 1138-39. Applying the above principles concerning the manifest error standard of review to this case, we find first that the record in this case reveals a reasonable factual basis for the jury's finding that Mr. Moore and Dupré should bear 100 percent of the fault for the accident in question. Mr. Fryson testified that he didn't see the Dupré semi-tractor/tanker until immediately before the accident, despite the fact that nothing was blocking, limiting, or obstructing his view. Mr. Fryson stated that he was wearing his glasses at the time and that he was paying very close attention because it was raining. His windshield wipers were on. When he saw the Dupré tanker, Mr. Fryson said, he blew his horn and stepped on his brake, but nevertheless slid into the tanker. He stated that he did not see any way to avoid the accident because of on-coming traffic in the left lane and a deep ditch to the right.
Mr. Fryson presented evidence in the form of the expert accident reconstruction testimony of New Orleans Police Department Major Raymond Charles Burkhardt, Jr., and Physicist Oscar Franklin Griffith. Mr. Burkhardt testified that the primary causes of the accident in question were Mr. Moore's inattentiveness and failure to yield the right of way to Mr. Fryson, who was on the favored street. Mr. Burkhardt stated that Mr. Moore could have stopped his vehicle in a very short distance at the speed he was traveling just prior to the accident. Moreover, Mr. Burkhardt said, because Mr. Fryson's vehicle was travelling on the favored street, he had a right to assume that the semi-tractor/tanker would stop at the road edge even if he saw it moving toward the road from some away. Mr. Griffith testified that the background at the site of the accident was visually "cluttered," which had a negative impact on Mr. Fryson's ability to see the semi-tractor/tanker. Once the semi-tractor/tanker proceeded past the road edge, it would only have taken one second for the vehicle to be completely covering the westbound lane, where Mr. Fryson was traveling, he said. Mr. Moore should have seen Mr. Fryson's headlights and stopped, Mr. Griffith stated.
Second, we find from our review of the record in its entirety that the jury's decision to assign 100 percent of the liability for the accident to Dupré is not manifestly erroneous. Not only is the jury's decision supported by the evidence cited above, but the record contains no documentary or objective evidence that contradicts that evidence. Dupré presented an alternate view of the evidence through the testimony of Mr. Moore and the expert testimony of Mr. Robert, who arrived at different conclusions from those expressed by Mr. Burkhardt and Mr. Griffith. However, all of Dupré's evidence, like all of Mr. Fryson's evidence, is based on a particular view of the events surrounding the accident, not documentary or objective evidence. The jury in this case was required to decide which of two views of the evidence to accept; it chose to accept the view presented by Mr. Fryson, rather than that view presented by Dupre'. Under the circumstances, the jury's finding is not manifestly erroneous.

General damages
Second, Dupré's claims that the $215,000 general damage award in favor of Mr. Fryson is excessive, primarily focusing on the $125,000 award for future pain and suffering. Dupré implies that any future pain and suffering Mr. Fryson experiences would be caused by his failure to mitigate damages, particularly his failure to undergo physical therapy as recommended by his doctor. Dupré also claims that Mr. *1022 Fryson had not had any medical attention for eleven months until just prior to trial.
An appellate court may disturb a damage award only if it finds that the award is an abuse of discretion. Valley v. Specialty Restaurant Corp., 98-0438, p. 22 (La.App. 4 Cir. 1/19/99), 726 So.2d 1028, 1040. The first question to be answered when reviewing a damage award is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the great discretion of the trier of fact. Id.; Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La. 1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). General damages involve physical and mental pain and suffering, inconvenience, loss of intellectual gratification or physical enjoyment, and other factors that affect the victim's life. Valley at 22-23; 726 So.2d at 1040.
Mr. Fryson's treating physician, Dr. Alain Cracco, testified that Mr. Fryson was required to undergo three different surgeries to repair the fractures in the various bones in his left arm caused by the accident. Dr. Cracco's also testified that Mr. Fryson will need at least two surgeries in the future to remove the hardware from his left arm, as well as five years of physical therapy. Dr. Cracco assigned a 5 percent functional disability to Mr. Fryson's left arm, which translates to a 3 percent whole body functional disability. Mr. Fryson claims that he has continuing pain in his left arm, and that he is not able to use the arm to the extent he used it prior to the accident. Moreover, Mr. Fryson notes that his reluctance to undergo physical therapy is understandable since the second and third surgeries were required because of reinjury that occurred in previous attempts to participate in therapy. Considering the particular injuries and their effects under the particular circumstances on Mr. Fryson, we find the jury did not abuse its great discretion in awarding Mr. Fryson $215,000 in general damages.

Future earning capacity
Finally, Dupré contests the jury's decision to award Mr. Fryson $25,000 for diminished earning capacity, asserting that this award is not supported by any competent record evidence. Mr. Fryson claims however that his own testimony is sufficient to support an award for loss of future earning capacity. Mr. Fryson testified that he was attending college at the time of the accident and that he has since finished college. At that point, Mr. Fryson stated, he attempted to join the armed forces, to follow in his father's footsteps, where he would have expected to enter as an officer because of his college education. Moreover, because Mr. Fryson was only 21 at the time of the accident, he claims that the $25,000 award averages only $1,000 per year for the remainder of his work life, which is not excessive given his injuries. Mr. Fryson claims that he had worked fulltime while attending college and that he would have continued to work fulltime throughout his life.
In order to determine an award for diminished earning capacity, a court must consider what plaintiff might have been able to earn. Kennedy v. Columbus America Properties, L.L.C. ex rel. Joseph C. Canizaro Interests, 99-0940, p. 4 (La.App. 4 Cir. 1/12/00), 751 So.2d 369, 372. The factfinder should consider both how much the injury affects the plaintiff in the workforce and what he may now earn given his resulting condition. In order to determine diminished earning capacity, the facts of the plaintiffs case must be assessed against the following factors: (1) the plaintiff's condition prior to the accident; (2) his work record prior to and *1023 after the accident; (3) his previous earnings; (4) the likelihood of his ability to earn a certain amount but for the accident; (5) the amount of work life remaining; (6) inflation; and (7) the plaintiff's employment opportunities before and after the accident." Id. at 4-5; 751 So.2d at 372. Under some circumstances, the plaintiff's own testimony, if credible and factually supported, will provide a sufficient basis for the factfinder's measurement of a loss of earning capacity. Lederer v. Famous Entertainment, Inc., 98-2274, p. 3 (La. App. 4 Cir. 5/12/99), 732 So.2d 1277, 1290, writ denied, 99-1707 (La.9/24/99), 747 So.2d 1123.
After reviewing the record evidence, we find that the jury abused its discretion in awarding Mr. Fryson $25,000 for his diminished earning capacity. Dr. Cracco testified that Mr. Fryson's anatomical disability did not translate into a functional disability of any kind. Moreover, there was no evidence presented of the amount of money Mr. Fryson might have been able to earn had this accident not occurred, nor even any testimony concerning the amount he can earn given his resulting condition. Mr. Fryson did testify concerning his understanding that he is not eligible for military service; however, that testimony is insufficient to prove that he will be unable to earn as much in some other occupations as he would have earning in the military, even if he entered as an officer. Accordingly, we amend the trial court judgment to delete the award for diminished earning capacity.

SUMMARY
Accordingly, the trial court judgment is amended to delete the $25,000 award for diminished earning capacity. In all other respects, the judgment is affirmed.
AMENDED; AFFIRMED AS AMENDED.
TOBIAS, J., CONCURS.
TOBIAS, J., concurs.
I respectfully concur.
The majority correctly sets forth the tests to determine the admissibility of a videotape as articulated by this Court in Ibieta v. Casino, Inc., 98-0314 (La.App. 4 cir. 10/7/98), 720 So.2d 143. I do not, however, agree that the trial judge did not consider all of the tests. Merely because a trial judge does not articulate for the record every conceivable reason he or she acts in a particular way does not mean or imply to me that he or she did not carefully consider the issue and act as directed by the law and jurisprudence. The trial judge had a reason to be concerned about the differences between that which was depicted in the videotape vis-á-vis the evidence of what happened on the night of the accident. The differences are of a sufficient magnitude as to preclude, within in the broad discretion granted to a trial judge to regulate the evidence, the full playing of the videotape to the jury.
One cannot with precision say to what extent the rain impaired the drivers' views of the scene on the night of the accident. The videotape was made on a dry night. Additionally, the weight of the truck's load affected how the truck handled. The truck was not loaded with diesel on the night of the videotape re-creation. Since the trial judge permitted the display of individual frames of the videotape, I find that such was reasonable and not an abuse of discretion.
NOTES
[1] Prior to oral argument in this case, Dupré filed a motion for stay of proceedings, citing a bankruptcy order of the Commonwealth Court of Pennsylvania. However, at oral argument, counsel for Dupré admitted that the stay order had expired. Accordingly, we do not address that issue here.