931 So.2d 1138 (2006)
Martinell JACKSON and Ida Williams
v.
Jerry J. COCKERHAM, Lou Gioe Trucking D/B/A Chalmette Truck Corporation and U.S. Capital Insurance Company.
No. 2005-CA-0320.
Court of Appeal of Louisiana, Fourth Circuit.
May 10, 2006.
*1140 Robert G. Harvey, Sr., 3431 Prytania Street, Tamara Kluger Jacobson, New Orleans, Counsel for Plaintiffs/Appellees.
Terrill W. Boykin, Kriste L. Talton, Bordenave Boykin & Ehret, New Orleans, Counsel for Appellants (Rta and Tmsel).
(Court composed of Judge PATRICIA RIVET MURRAY, Judge JAMES F. MCKAY, III, Judge MICHAEL E. KIRBY).
MICHAEL E. KIRBY, Judge.
Defendants, Regional Transit Authority ("RTA") and Transit Management of Southeast Louisiana ("TMSEL"), appeal the October 18, 2004 trial court judgment in favor of plaintiffs, Martinell Jackson and Ida Williams, and against defendants.
On February 13, 1996, a tractor-trailer truck owned by Lou Gioe Trucking and operated by Jerry Cockerham struck a bus owned by the defendants and operated by plaintiff Ida Williams. Martinell Jackson was a guest passenger on the bus. U.S. Capital was the insurer of Mr. Cockerham and Lou Gioe Trucking, but later became insolvent and the Louisiana Insurance Guaranty Association ("LIGA") became the successor in interest to U.S.Capital.
LIGA filed a motion for summary judgment seeking enforcement of La. R.S. 22:1386, known as the LIGA Credit Statute. LIGA argued that this statute required plaintiffs to recover against all other sources before the statutory LIGA limits would be available. At the time of the accident, the bus was self-insured by RTA/TMSEL for the first $1 million of liability, with Lexington Insurance Company ("Lexington") providing an additional $14 million in coverage. No uninsured/underinsured ("UM") rejection form was signed when the Lexington policy was issued. In its motion for summary judgment, LIGA claimed that the $1,000,000.00 self-insured retention and the $14 million Lexington policy limits provided a total of $15 million in UM benefits that had to be exhausted before the LIGA limits would be available. At this point in the litigation, neither RTA nor TMSEL had yet been named as a defendant.
The trial court granted LIGA's motion for summary judgment, finding that there was $1 million in UM coverage under the self-insured retention of the defendants *1141 and $14 million in UM coverage provided by Lexington. The court ruled that LIGA was entitled to a credit for the full $15 million in UM coverage, and dismissed LIGA from further proceedings after plaintiffs stipulated that their total damages did not exceed that amount. Following this judgment, the plaintiffs moved for a new trial and amended their petition to add RTA and TMSEL as defendants. While the motion for new trial was pending, LIGA filed another motion for summary judgment against defendants, urging the same argument as in its first motion for summary judgment, i.e. that under the applicable statutes, the self-insured retention of the defendants and the policy limits of the Lexington policy had to be exhausted before the LIGA limits would be available. The trial court granted LIGA's second motion for summary judgment, and dismissed LIGA from the proceedings. Defendants appealed the trial court's granting of the LIGA's second motion for summary judgment.
This Court affirmed the trial court's judgment in Jackson v. Cockerham, 2002-2493 (La.App. 4 Cir. 5/21/03), 847 So.2d 698, writ denied, 2003-2207 (La.11/14/03), 858 So.2d 429. In that appeal, RTA and TMSEL argued that the self-insured retention does not qualify as a "policy" for purposes of the application of the LIGA Credit Statute, La. R.S. 22:1386. La. R.S. 22:1386(A) states as follows:
Any person having a claim against an insurer under any provision in an insurance policy, other than a policy of an insolvent insurer which is also a covered claim, shall be required first to exhaust his rights under such policy. Such other policies of insurance shall include but shall not be limited to liability coverage, uninsured or underinsured motorist liability coverage, or both, hospitalization, coverage under self-insurance certificates, coverage under a health maintenance organization or plan, preferred provider organization or plan, or similar plan, and any and all other medical expense coverage. All entities that are prohibited from recovering against the association, as specified in R.S. 22:1379(3)(b), shall also be considered insurers for purposes of this Subsection. As to the association, any amount payable by such other insurance shall act as a credit against the damages of the claimant, and the association shall not be liable for such portion of the damages of the claimant. In the case of a claimant alleging personal injury or death caused by exposure to asbestos fibers or other claim resulting from exposure to, release of, or contamination from any environmental pollutant or contaminant, such claimant must first exhaust any and all other insurance available to the insured for said claim for any policy period for which insurance is available before recovering from the association, even if an insolvent insurer provided the only coverage for one or more policy periods of the alleged exposure.
This Court noted that La. R.S. 22:1379(3)(b), which is referred to in La. R.S. 22:1386(A), specifically mentions entities that have a certificate of self-insurance. Applying La. R.S. 22:1386 as amended in 1999, this Court found that this statute conferred the status of "insurer" upon RTA/TMSEL. Because LIGA is to be an obligor of last resort, this Court held that plaintiffs had to exhaust the self-insured retention of RTA/TMSEL and the Lexington policy limits before the LIGA limits would become available. Furthermore, when considering La. R.S. 22:1406(D), governing the issuance of uninsured motorist coverage, along with public policy considerations favoring UM protection in general and for bus patrons in particular, this Court found that when *1142 read together, La. R.S. 22:1386 and 1406 lead to the result that RTA/TMSEL is an "insurer" and must provide UM coverage unless specifically rejected. Accordingly, this Court held that the plaintiffs were required to exhaust all $15 million in UM coverage afforded collectively by RTA/ TMSEL and Lexington before LIGA had exposure. This Court affirmed the trial court's granting of LIGA's second motion for summary judgment and dismissal of LIGA from this case due to the fact that the plaintiffs stipulated that their damages did not exceed $15 million.
Following this Court's decision affirming the trial court's dismissal of LIGA, plaintiffs' claims against RTA and TMSEL proceeded to trial. Following trial, the trial court rendered judgment in favor of plaintiffs and against defendants. The court awarded plaintiff, Ida Williams, $10,000.00 in general damages, $2,145.00 in medical expenses and $1,781.28 in lost wages, together with judicial interest from the date of demand until paid and all costs of the proceedings. The court awarded plaintiff, Martinell Jackson, $300,000.00 in general damages, $11,741.46 in medical expenses and $19,800.00 in loss of earning capacity, together with judicial interest from the date of demand until paid and all costs of the proceedings. Defendants now appeal.
On appeal, the defendants argue that this Court's previous decision in Jackson v. Cockerham, 2002-2493 (La.App. 4 Cir. 5/21/03), 847 So.2d 698 was incorrect, and that this Court should revisit its earlier ruling. The defendants argue that such reconsideration is allowed because the law of the case doctrine is discretionary and should not be invoked in cases of palpable error. Specifically, the defendants argue "the 1999 amendment to the LIGA Credit Statute did not overrule the long established precedent that self-insurers are not required to provide UM benefits." We find no merit in the defendants' argument that we should reconsider this Court's previous decision in this matter, as we find that the earlier decision was well founded. The defendants provided UM coverage for this accident.
The defendants next argue that the trial court erred in finding that Mr. Jackson's second knee surgery was causally related to the present accident, and in awarding excessive general damages to Mr. Jackson. The record shows that Mr. Jackson underwent arthroscopic surgery on July 9, 1997 for a tear to the anterior cruciate ligament ("ACL") in his left knee and a large tear in the meniscus, which the trial court found were injuries sustained in the bus accident. In June 1998, Mr. Jackson was in another vehicular collision. He underwent an arthroplasty, or complete knee replacement, in June 1999. The defendants argue that the second knee surgery in 1999 was not related to the bus accident, citing the deposition testimony of Dr. Andrew Kucharchuk, Mr. Jackson's orthopedic surgeon. Dr. Kucharchuk stated that the knee arthroplasty (second surgery) was 95% due to Mr. Jackson's arthritis and 5% due to the vehicular collision that occurred after the bus accident at issue. Dr. Kucharchuk performed the 1997 arthroscopic surgery, but did not perform the 1999 arthroplasty. Dr. Kucharchuk's deposition testimony was the only testimony by a physician in this case. Mr. Jackson's medical records, including those relating to the 1997 arthroscopic surgery and the 1999 arthroplasty, were also introduced at trial.
In reasons for judgment, the trial court specifically rejected the defendants' argument that the second knee surgery was not related to the bus accident. The court stated that prior to the second accident, Mr. Jackson had knee pain due to the tear in his meniscus and ACL. The tears were *1143 noted in an MRI taken two months after the bus accident and before the second accident in 1998. The trial court stated that the operative report of the second surgery at Charity Hospital indicates that the tears in the meniscus and ACL were repaired during the second surgery. The meniscus was removed, and the ACL was repaired. Noting that Dr. Kucharchuk assessed 95% of the need for the second surgery to Mr. Jackson's arthritis and 5% to the second accident, the court found that the defendants are responsible for the repair of Mr. Jackson's ACL and meniscus, and this was only accomplished in the second surgery.
A trial court's findings of fact will not be set aside in the absence of manifest error or unless they are clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La.1989). The operative report of the Medical Center of Louisiana at New Orleans (commonly referred to as Charity Hospital) regarding the June 14, 1999 arthroplasty supports the trial court's conclusion that the repairs the Mr. Jackson's ACL and meniscus were accomplished in that surgery. The medical records also show that an MRI taken several months after the bus accident and before the second accident revealed that the tears to the ACL and meniscus were present at that time and were causing Mr. Jackson pain. After reviewing the record as a whole, we conclude that the trial court's finding that defendants are responsible for Mr. Jackson's arthroplasty is reasonable, and will not be disturbed on appeal.
Defendants next complain that the trial court erred in awarding excessive general damages to Mr. Jackson. The trial court awarded Mr. Jackson general damages in the amount of $300,000.00. Most of defendants' argument hinges on their earlier argument that the trial court erred in finding them liable for Mr. Jackson's second surgery. As stated above, we find no merit in that argument. Furthermore, we note that the discretion vested in the trier of fact in the awarding of general damages is great, and even vast. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993). Considering the injuries suffered by Mr. Jackson that have been related to the 1996 bus accident, and the surgical procedures performed as a result thereof, we do not find that the award of $300,000.00 in general damages to Mr. Jackson was excessive. This argument is also without merit.
Defendants also argue that the trial court erred in its award of special damages to Mr. Jackson. The trial court awarded Mr. Jackson $11,741.46 in medical special damages. Again, defendants' argument regarding this item of damages hinges on its earlier argument that they are not responsible for Mr. Jackson's second surgery. Having found that argument without merit, we likewise find that the argument that the trial court awarded excessive special damages is without merit.
The defendants' next argument is that the trial court erred in awarding Mr. Jackson damages for loss of earning capacity. The trial court awarded Mr. Jackson $19,800.00 for loss of earning capacity. Defendants contend that there was no evidence presented to justify this award. Plaintiffs counter that the trial court's award of damages for loss of earning capacity was supported by testimony presented at trial.
In determining loss of earning capacity, the factfinder must consider the following factors: (1) the plaintiff's condition prior to the accident; (2) his work record prior to and after the accident; (3) his previous earnings; (4) the likelihood of his ability to earn a certain amount but for the accident; (5) the amount of work life remaining; (6) inflation; and (7) the plaintiff's *1144 employment opportunities before and after the accident. Fryson v. Dupre Transport, Inc., XXXX-XXXX, p. 15 (La.App. 4 Cir. 8/29/01), 798 So.2d 1012, 1022-1023, citing Kennedy v. Columbus America Properties, L.L.C. ex rel. Joseph C. Canizaro Interests, 99-0940 (La.App. 4 Cir. 1/12/00), 751 So.2d 369. Under some circumstances, the plaintiff's own testimony, if credible and factually supported, will provide a sufficient basis for the factfinder's measurement of a loss of earning capacity. Id., p. 15, 798 So.2d at 1023, citing Lederer v. Famous Entertainment, Inc., 98-2274 (La.App. 4 Cir. 5/12/99), 732 So.2d 1277.
The trial court considered these factors, and stated in reasons for judgment that Mr. Jackson's testimony regarding the number of hours he worked as well as the kind of work he performed prior to the accident was credible. The court noted that Mr. Jackson quit his job one week prior to the accident in order to search for a better-paying job, but was unable to find employment after the accident due to severe knee pain. The court found Mr. Jackson's testimony regarding his knee pain to be credible.
However, the court found that there was no evidence showing that Mr. Jackson was physically unable to work after recuperating from his 1997 arthroscopic surgery. Accordingly, the trial court found that Mr. Jackson sustained a loss of earning capacity from February 14, 1996 until January 1, 1998, or six months after the 1997 arthroscopic surgery. The court found that a six-month recuperative period following arthroscopic surgery was reasonable. The court awarded Mr. Jackson $19,800.00 for loss of earning capacity, and based this award upon his earning minimum wages and working forty hours per week.
Defendants incorrectly state in their appeal brief that the trial court only intended to award Mr. Jackson loss of earning capacity for the six-month recuperative period following the 1997 arthroscopic surgery. The court clearly stated that the award for loss of earning capacity was calculated from the date of the bus accident until after the six-month recuperative period following the 1997 surgery. In reasons for judgment, the court stated that Mr. Jackson sustained a loss of earning capacity from February 14, 1996 until January 1, 1998. The date of January 1, 1998 represented the end of the six-month recuperative period following Mr. Jackson's July 1997 surgery.
Although Mr. Jackson's testimony is the only evidence in the record presented on the issue of loss of earning capacity, the trial court found this evidence to be credible and a sufficient basis for measuring plaintiff's loss of earning capacity. We find no error in the trial court's conclusion that Mr. Jackson is entitled to this award. Furthermore, we do not find that this item of damages was excessive or unreasonable.
Defendants next argue that the trial court erred in denying their motion for summary judgment regarding the exclusivity of the worker's compensation scheme with respect to the claims of the bus driver, Ida Williams. They further argue that the trial court erred in awarding damages to Ms. Williams. Defendants also note that an exception of no cause of action was filed in this case asserting the Ms. Williams' exclusive remedy is in worker's compensation. Defendants contend that the exception was not heard or ruled upon by the trial court prior to the previous appeal, and this Court did not address the issue of the exclusivity of worker's compensation in the previous appeal. After the previous appeal but prior to trial, defendants filed a motion for summary judgment, reiterating their position that *1145 Ms. Williams' exclusive remedy in this case is in worker's compensation.
In the trial court's March 23, 2004 judgment, the court denied defendants' motion for summary judgment, finding that the trial and appellate courts have already addressed the issues presented in that motion. Ms. Williams argues that the trial court is correct in its statement that the issue of the exclusivity of worker's compensation has already been considered. Specifically, Ms. Williams points out that the previous opinion of this Court referred to Ms. Williams as "the bus driver," and included discussion of a Louisiana Supreme Court case that involved a claim for worker's compensation benefits and its relationship to LIGA.
We disagree with Ms. Williams' argument that this Court, in the previous opinion in this case, considered and rejected the defendants' argument that Ms. Williams' exclusive remedy is in worker's compensation. A reference to Ms. Williams as the bus driver and the discussion of another case involving worker's compensation did not constitute consideration of this argument. Ms. Williams does not allege in her brief that the trial court ruled on defendants' exception of no cause of action, and there is no evidence in the record of any such ruling. We conclude that the trial court erred in finding that this Court in its previous opinion addressed the issue whether Ms. Williams' exclusive remedy in this case is to receive worker's compensation benefits. Having reached this conclusion, we must now consider the issue of whether Ms. Williams' exclusive remedy is in worker's compensation.
La. R.S. 23:1032 provides that an employee's exclusive remedy against an employer for a work-related injury is the right to worker's compensation benefits. An exception to this general rule exists when the employee's injury or disease is the result of an intentional tort. There has been no allegation of intentional tort in this case.
It is undisputed that Ms. Williams was within the course and scope of her employment as a bus driver for defendants at the time of the accident at issue. Thus, the trial court erred in ruling that Ms. Williams is entitled to recover UM benefits from defendants for this accident. Ms. Williams' exclusive remedy is worker's compensation. Accordingly, the judgment awarding UM benefits to her is reversed.
Finally, defendants argue that the trial court erred in awarding judicial interest from the date that the original petition was filed because the defendants are political subdivisions that were not named as defendants in this lawsuit until almost five years after the filing of the original petition. Because we are reversing the portion of the trial court judgment awarding damages to Ms. Williams because her exclusive remedy against defendants is in worker's compensation, this final argument only applies to the judgment in favor of Mr. Jackson. In its judgment, the trial court awarded judicial interest from date of demand on all damages. When the trial court stated its oral reasons for judgment following trial, the defendants questioned whether judicial interest would run from the date of the filing of the petition against the original defendants or from the date that the defendants in the instant appeal were served. The trial court clarified that its award of judicial interest was from the date of the original petition in this case.
Defendants argue that La. R.S. 13:5112 dictates that judicial interest against a political subdivision accrues only from the date service is requested on it after the political subdivision has been sued. However, this argument ignores the fact that TMSEL was not granted political subdivision status by the Louisiana Legislature *1146 until 2004 when La. R.S. 13:5102 was amended to reflect this change in status. The original petition in this case was filed in 1997, and defendants were sued in 2001. The 2004 amendment to La. R.S. 13:5102 is substantive in nature, and is not entitled to retroactive application. See La. C.C. article 6.
The general rule is that legal interest runs from the plaintiff's first judicial claim against any party responsible for a single tortious act. Edwards v. Daugherty, 2003-2103, p. 23 (La.10/1/04), 883 So.2d 932, 947. Under the facts of this case, we conclude that the trial court correctly awarded judicial interest from the date of the original petition.
For the reasons stated above, the portion of the trial court judgment in favor of Mr. Martinell Jackson and against defendants is affirmed. The portion of the judgment in favor of Ms. Ida Williams and against defendants is reversed. Ms. Williams' exclusive remedy for her injuries sustained in the February 13, 1996 accident is under the Louisiana Worker's Compensation Act, La. 23:1201 et seq. Ms. Williams' claims against defendants are dismissed with prejudice.
AFFIRMED IN PART; REVERSED IN PART