STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

07-1385


STATE OF LOUISIANA, THROUGH THE DEPARTMENT OF
TRANSPORTATION AND DEVELOPMENT

VERSUS

DAVID WADE, ET AL.


**********

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, NO. 40465
HONORABLE KATHY A. JOHNSON, DISTRICT JUDGE

**********

**BILLY HOWARD EZELL**
**JUDGE**

**********

Court composed of Jimmie C. Peters, Elizabeth A. Pickett, and Billy Howard Ezell, Judges.

Pickett, J., dissents and assigns written reasons.


**AFFIRMED IN PART AS AMENDED AND REVERSED IN PART.**


**Julie Mobley Lafargue**
**Abrams & Lafargue, LLC**
**330 Marshall Street, Suite 1020**
**Shreveport, LA 71101**
**(318) 222-9100**
**Counsel for Plaintiff-Appellant:**
**State of Louisiana, through the Department of Transportation and**
**Development**

**Ricky L. Babin**
**Stephen P. Sheets**
**John A. Harper**
**Sheets, Babin & Associates**
**P. O. Box 204**
**Gonzales, LA 70707**
**(225) 647-7900**
**Counsel for Defendants-Appellees:**
**David Wade**
**Sharon Richardson Wade**
**James W. Wade**
**Suzanne Campbell Wade**

**EZELL, JUDGE**.

In this matter, the State of Louisiana through the Department of Transportation and Development (DOTD), appeals a jury verdict awarding David and James Wade and their wives $621,584.75 as compensation for the expropriation of their land and store. For the following reasons, we affirm the jury's decision in part as amended and reverse in part.

## STATEMENT OF THE CASE

David and James Wade operated D & J Sales, a retail agricultural supply store, on U.S. Highway 84 in Wildsville, Louisiana, from 1985 until 2005. A large part of their business was the sale of seed and chemicals to row farmers in Catahoula and Concordia Parishes. The brothers also sold and repaired trailers and other farm equipment, sold and repaired all-terrain vehicles, and sold feed and supplies for livestock, including hay that they produced. The Wades also operated a cattle farming operation, which they conducted primarily on their family farm, though they did occasionally use the D & J Sales location to meet customers to deliver cattle.

The property on which D & J Sales operated was an approximately eight-acre tract of land bounded by U.S. Highway 84 on the North. Over the years, the Wades had constructed improvements on the land that facilitated their business. They had a large area between the highway and the retail showroom that allowed them to display trailers and all-terrain vehicles. They had constructed driveways that enabled tractor-trailers to deliver and pick up supplies. They had constructed two large warehouses. One 7,200 square foot warehouse was immediately adjacent to the retail area and had a concrete floor. It had a large passthrough that allowed large trucks to drive through and load or unload in the warehouse. It also had a shop area for trailer repair and ample storage space. Behind the first warehouse was a second 5,760

1

square foot warehouse. This second warehouse had more storage space, as well as open storage spaces to the east and west of it for storage of hay and other equipment.

Beginning in 1993, DOTD began making public the plans to improve Highway 84. It was apparent from the beginning of the public discussions that DOTD would build a new bridge over the Black River near Wildsville and that the property on which D & J Sales operated would be expropriated. After years of discussion and planning, DOTD filed a petition on June 8, 2005, with the district court expropriating 4.017 acres in the center of the Wades' eight-acre tract of land. As all the buildings on the property were within the area expropriated, all of the buildings on the property had to be demolished. In conformity with the statutes regulating expropriation, DOTD deposited $176,310.00 in the registry of the court as just compensation for the expropriation of the Wades' property. This amount included $159,249.00 for the value of the land and improvements taken and $17,061.00 in damages. These figures were based on the market value of the property. On June 20, 2005, an Order of Expropriation was signed by the trial court.

The Wades filed a petition in reconvention on June 8, 2006, seeking an increase in the amount of compensation. They argued that they were entitled to the replacement value of the land and improvements taken by the State. The matter proceeded to a jury trial to determine the amount of compensation due to the Wades. Following a trial held on January 18 and 19, 2007, the jury rendered a verdict. In response to jury interrogatories, the jury found that the amount of compensation due for the taking of the property was $161,694.00; $25,352.00 for the land and $136,442.00 for improvements thereon. The jury found that the Wades were owed severance damages to their remaining property in the amount of $14,516.00. Thus, the total award of just compensation for the land taken was $176,310.00. Further, the

2

jury found that the Wades proved by a preponderance of the evidence that they were entitled to the replacement costs for their improvements. The jury awarded $556,223.75 to the Wades as the replacement cost of the buildings, less depreciation. The jury also awarded $55,361.00 as the fair market value of land on which to build the new buildings.

Following the trial, the court ordered counsel for the Wades to prepare a judgment. DOTD objected to the judgment submitted, on the grounds that it was required to pay the full amount of both the fair market value of the property taken and the replacement cost of the property. DOTD argued that should the Wades receive the higher amount of $621,584.75 for the replacement cost, a credit of $176,310.00 must be given for that which had previously been paid. Following a hearing, the court found that the Wades should receive $621,584.75, in addition to the amount previously paid by the State. The trial court issued a judgment on June 21, 2007, awarding the Wades $621,584.75.

From that decision DOTD now appeals, asserting three assignments of error:

1. The jury erred in awarding the replacement cost of land and buildings, because the award placed the property owners in a better pecuniary position than before the taking, in violation of the constitutional mandate that the property owners be placed in the same pecuniary position as before the taking.

2. The jury erred in awarding the replacement cost of land and buildings because the property taken was not both unique in nature and location and also indispensable to the property owners' business operations.

3. The trial judge erred in entering a judgment that failed to credit the $176,310.00 deposit that the State already paid to the property owners.

Because we find that a de novo review is required in this matter, we will not address each assignment of error specifically, but rather generally in the course of our review.

3

# DISCUSSION

Under the guidelines of Louisiana Code of Civil Procedure Article 1812, the trial court is given wide discretion in determining and framing questions to be posed as special jury interrogatories, and absent some abuse of that discretion, this court will not set aside those determinations. *Grayson v. R.B. Ammon and Assoc., Inc.*, 99-2597 (La.App. 1 Cir. 11/3/00), 778 So.2d 1, *writs denied*, 00-3270, 00-3311 (La. 1/26/01), 782 So.2d 1026, 1027. Article 1812(A) provides, in relevant part:

> [T]he court may submit to the jury written questions susceptible of categorical or other brief answer, or may submit written forms of the several special findings which might properly be made under the pleadings and evidence, or may use any other appropriate method of submitting the issues and requiring the written findings thereon. The court shall give to the jury such explanation and instruction concerning the matter submitted as may be necessary to enable the jury to make its findings upon each issue.

"If the trial court submits a verdict form to the jury with misleading or confusing interrogatories, just as when it omits to instruct the jury on an applicable essential legal principle, such interrogatories do not adequately set forth the issues to be decided by the jury and may constitute reversible error." *Bradbury v. Thomas*, 98-1678 (La.App. 1 Cir. 9/24/99), 757 So.2d 666, quoting *Diez v. Schwegmann Giant Supermarkets, Inc.*, 94-1089, p.5 (La.App. 1 Cir. 6/3/95), 657 So.2d 1066, 1069. When an appellate court finds that legal error in the trial judge's jury instructions and/or interrogatories prejudiced one of the parties, the appellate court should set aside the jury findings and perform a *de novo* review of the record. *Fryson v. Dupre Transp., Inc.,* 00-858, 00-859 (La.App. 4 Cir. 8/29/01), 798 So.2d 1012, *writs denied*, 01-2684, 01-2685 (La. 12/14/01), 804 So.2d 631, 638.

Our close review of the record in this case convinces us that the jury interrogatories on fair market value and replacement costs were tainted with legal error. The jury verdict form presented the jury with inherently incorrect and

4

inconsistent choices. Namely, the form was structured in such a way as to allow the jury to award the Wades both the fair market value of their land and buildings as well as replacement costs for the same, rather than forcing the jury to decide which was the correct manner in which to reimburse the Wades. This is clearly reflected in the fact that after awarding what it deemed to be fair market value for the expropriated land and improvements thereon, the jury went on to award the Wades replacement costs for both the land and the buildings, essentially allowing a double recovery. Accordingly, we find that a *de novo* review is appropriate in this matter.

Louisiana Constitution Article 1, Section 4, provides that the State may only take property from a private citizen for a public purpose with just compensation. Subsection (B)(5) states:

> In every expropriation or action to take property pursuant to the provisions of this Section, a party has the right to trial by jury to determine whether the compensation is just, and the owner shall be compensated to the full extent of his loss. Except as otherwise provided in this Constitution, the full extent of loss shall include, but not be limited to, the appraised value of the property and all costs of relocation, inconvenience, and any other damages actually incurred by the owner because of the expropriation.

The primary issue raised in this case is whether just compensation to the Wades includes replacement cost of the land and improvements expropriated by the State. The supreme court first recognized replacement cost as an acceptable measure of just compensation in *State, through the Dep't of Highways v. Constant*, 369 So.2d 699 (La.1979). There, the supreme court noted that the measure of damages required in expropriation cases is "that an owner not only be paid the market value of property taken and severance damages to his remainder, but also that such an owner be put in as good a position pecuniarily as he would have been had his property not been taken." *Id*. at 701.

5

In *Constant*, the supreme court found that the owners of a marina whose loading area was taken were entitled to the replacement cost of the loading area. The court determined that the waterfront property had been fortified with bulkheads and fill to allow heavy equipment to unload and enter the adjacent bayou. The evidence showed that because of a nearby bridge with a low clearance, this particular location was unique for allowing heavy equipment to gain access to the bayou and reach pipeline facilities. The court also found that this was an indispensable part of the landowners' marina business. The supreme court announced the following rule for determining if replacement cost is the appropriate measure of just compensation:

> We do not, by these rulings, announce any general principle that replacement cost is always the most appropriate measure of awarding a landowner compensation for the taking of a physical asset used in his business, nor that the depreciation of the former asset should never be considered.

> Generally, we assume, the landowners may be compensated fully by other approaches than by awarding them the replacement cost of the improvement taken, especially where (unlike the present instance) the property is not shown to be both unique in nature and location and also indispensable to the conduct of the landowners' business operations on the site from which a part is taken. Likewise, in the usual situation the depreciated value of the asset taken will have some lessening effect on the award to the landowner, since he may be fully compensated by the actual pecuniary value of the asset taken. For instance, the full compensation constitutionally provided does not require that the owner receive a new building to replace a dilapidated one which is expropriated.

*Id*. at 706-07.

The Wades argue that they are entitled to recover the replacement cost of their property because the property taken was "both unique in nature and location and also indispensable to the conduct of the landowners' business operations on the site from which a part is taken."

We agree with DOTD that the land in and of itself was not unique in nature or location. The evidence shows that most of the customers of D & J Sales testified that

6

they would continue to patronize the business as long as the new location was reasonably close to the prior location. Therefore, the jury's award of $55,361.00 to purchase new land for a replacement building was incorrect. The record does, however, support the jury's awards of $25,352.00 as the fair market value of the land seized by DOTD and $14,516.00 for severance damages. Those awards are, accordingly, affirmed.

However, the land alone did not constitute the extent of the seizure by DOTD. The expropriation included the buildings constructed by the Wades to suit their particular business needs. Our review of the record indicates that the buildings and improvements taken were not only unique in nature and location, but also indispensable to the conduct of the landowners' business operations.

The property at issue was tailored to meet the needs of D & J Sales. They had a large area between the highway and the retail showroom that allowed them to display trailers and all-terrain vehicles. They had constructed two large warehouses crafted to accommodate the wide range of services and transactions they performed. One of the warehouses was immediately adjacent to the retail area and had a large passthrough and a concrete floor to allow large trucks to drive through and load or unload in the warehouse. It also had a shop area for trailer repair and ample storage space. The other warehouse not only provided more storage space for feed, seeds, and chemicals that had been purchased but were not yet needed by the customers, but also contained special open storage spaces to the east and west of it for storage of hay. This was necessary for ease of access for both D & J Sales, who baled as well as sold hay, and their customers for easy loading. These buildings were clearly unique, as they were singular in nature, and were designed to fit the specific business plan of D & J Sales. They were indispensable to the conduct of the D & J Sales'

7

business operations and the expropriation by the State made it impossible for the Wades to continue their business.

Moreover, the record indicated that the only available commercial property in the area was an old grocery store that was valued at $800,000.00 prior to the modifications the Wades would need to make in order to have a viable store. This amount is well beyond the amount the Wades seek to build a new store to their required specifications. To put it simply, we must choose between awarding the Wades the replacement costs of these improvements or putting them out of business. We choose the former. Accordingly, we find that the Wades are entitled to replacement costs for the loss of these buildings and hereby affirm the finding of the jury that the replacement costs for the building are $566,223.75, less depreciation. However, we reverse the jury's award of $136,442 for the fair market value of the improvements, in order to prevent the Wades for receiving a double recovery for the loss.

For the above reasons, we reverse the award of $55,361.00 for replacement costs of the land and $136,442.00 for the market value of the improvements. We affirm the jury's decision awarding the Wades $25,352.00 for the taking of their land, $14,516.00 for severance damages, and $566,223.75 for the replacement costs of the improvements, for a total award of $606,091.75. This amount is reduced to $429,781.75 after allowing a credit for $176,310.00 already paid to the Wades by DOTD. Costs of this appeal, $2,280.00, are to be split between the parties.

**AFFIRMED IN PART AS AMENDED AND REVERSED IN PART.**

8

STATE OF LOUISIANA, THRU THE DEPARTMENT OF
TRANSPORTATION AND DEVELOPMENT

VERSUS

DAVID WADE, ET AL.

**PICKETT, J., dissenting.**

I respectfully dissent. The majority falls into error by finding the jury instructions inadequate. It also errs in its *de novo* review of the verdict of the jury. I would reverse the award of replacement costs for the property taken, and limit the Wades' recovery to the fair market value of the land and improvements expropriated by the state.

The supreme court has explicitly told this court that it is not the role of an appeals court to consider the effect of jury instructions if they are not contested by the parties on appeal. *Guidry v. Dwight Manuel, Inc.*, 04-2031 (La. 11/17/04), 887 So.2d 456. Furthermore, the record does not show that either party objected to the jury instructions in the trial court, as required by La.Code Civ.P. art. 1793(C). The majority cites cases for the proposition that a *de novo* review is required if a court finds the jury instructions legally incorrect. But in each of those cases the issue was squarely presented to the court for review by the appellants. The majority exceeds the authority of this court by conducting a *de novo* based on an alleged error that was neither preserved for review nor assigned as error. I find that the proper review of the judgment below is under the manifest standard of review.

1

Applying the proper standard, I would reverse the judgment of the trial court. There is nothing in the record to support a finding that the property was "both unique in nature *and* location" as required under *State, through the Department of Highways v. Constant*, 369 So.2d 699 (La.1979) (emphasis added). The evidence shows that the property and the improvements situated thereon suited the business plan of D&J Sales, and the expropriation by the state made it impossible for the Wades to continue the business at that location. The Wades failed to prove, however, that the location of the D&J Sales was so unique as to make continuing the business at another location impossible. I disagree with the majority's interpretation of the application of the rule set forth in *Constant*.

The facts in *Constant* are clearly distinguishable from the facts in this case. In *Constant*, the location of the loading area for which replacement costs were ordered was so unique that it was indispensable to the operation of the marina at issue. The court was, however, careful to limit the applicability of a replacement cost rule to those situations where the property is "shown to be both unique in nature *and* location *and* also indispensable to the conduct of the landowners' business operations on the site from which a part is taken." *Id.* at 706 (emphasis added). I do not find evidence in this record to support a finding that the plaintiffs' property is so uniquely situated that it meets the requirements set forth in *Constant*.

I would find that the Wades were fully compensated under law for the expropriation of their land when DOTD paid them for the fair market value of the land and improvements and severance damages as awarded by the jury in response to interrogatories. I would, therefore, reverse the judgment of the trial court awarding the Wades the replacement costs of land and improvements.

2